[No. 22872. Department One. April 2, 1931.]

FRANK KATICH, *Respondent,* v. JOHN EVICH,. *Appellant.*[1]

*R. W. Greene,* for appellant.
*Wesley. Lloyd,* for respondent.

MAIN, J.—This action was brought to recover damages for the breach of an oral contract of employment.

[1]Reported in 297 Pac. 762.

In the answer, the defendant pleaded that the plaintiff was discharged for cause, and also that he quit voluntarily. At the opening of the trial, upon motion of the plaintiff, the defendant was required to elect upon which of the defenses he would rely, and he elected to rely upon the defense that the plaintiff voluntarily quit. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the defendant had breached the contract, and that the plaintiff was entitled to a recovery. Judgment in the sum of four hundred dollars was entered in favor of the plaintiff, from which the defendant appeals.

The appellant resided in the city of Bellingham, and the respondent in the city of Tacoma. Early in the year 1929, the appellant employed the respondent as a member of the crew of a seine boat to fish for salmon in the waters of Puget Sound, under an agreement by which each member of the crew was to receive, as compensation for the entire season, which ended September 5, one-twelfth of the net proceeds from the season's catch. At the request of appellant, the respondent worked from June 10 to June 19, and from July 5 to July 17, preparing for the fishing trip the gear and nets and the boat ''Avalon,'' owned by appellant. For this preliminary work there was no extra compensation, it being considered part of the season's work. From July 17 until August 2, the respondent and the other members of the crew engaged in fishing on the ''Avalon.''

On the date last named, the boat landed at the city of Bellingham to remain for a day or two. At that time, according to respondent's contention, he was discharged by appellant; according to appellant's contention, the respondent voluntarily quit. On the day following, August 3, the appellant mailed to respond-

ent, at his Tacoma address, a cashier's check for $67.20, accompanied by a statement showing that that was the balance due the respondent up to the time he was discharged. In a brief letter accompanying the check, it was recited that the check and statement were enclosed ''for your one share of the fish caught on the boat Avalon up to August 3, 1929.'' The check was retained by the respondent, but was not cashed. A short time thereafter, the present action was instituted, and upon the trial the respondent produced the check and it was received in evidence.

After the respondent was discharged, another man was employed by the appellant to take his place. The net share for the season of each member of the crew was $689, the successor to respondent receiving $621.

The first question is whether the respondent was discharged or voluntarily quit. Upon this question, the evidence is directly in conflict. The trial court found,

''That the plaintiff worked continuously for said defendant on the waters of Puget Sound and open waters attached thereto until the evening of the second day of August, at which time the said defendant, without sufficient cause, arbitrarily discharged said plaintiff, and that the plaintiff was unable to secure employment for the balance of the fishing season.''

After giving consideration to all of the evidence, and without reviewing it in detail, it may be said that the finding of the trial court is supported by the decisive weight of the testimony.

The next question is whether there was an accord and satisfaction by reason of the sending of the cashier's check above mentioned, and its retention by the respondent. An accord and satisfaction is founded on contract, and a consideration therefor is as necessary as for any other contract. *Plymouth Rubber Co.*

*v. West Coast Rubber Co.,* 131 Wash. 662, 231 Pac. 25. In this case, it should be observed that the respondent did not cash the check, and that at the time appellant sent the same he did not inform respondent that it was intended to be considered as full payment. In *LeDoux v. Seattle North Pacific Shipbuilding Co.,* 114 Wash. 632, 195 Pac. 1006, it is said:

"The general rule is that, where a debtor sends to his creditor a check for the amount he is willing to pay, and at that time informs the creditor that he intends the check to be considered as full payment, then, by the acceptance and cashing of the check, the creditor agrees to the settlement and cannot thereafter seek additional compensation."

The cases of *James v. Riverside Lumber Co.,* 121 Wash. 130, 208 Pac. 260, and *Plymouth Rubber Co. v. West Coast Rubber Co., supra,* are distinguishable from this case in that in each of those cases the check sent was cashed.

The next question is whether the trial court erred in limiting the cross-examination of the respondent, and in rejecting evidence offered by the appellant as a part of his case. On cross-examination the respondent was asked: "Were things pleasant for you and between you and other members of the crew on the boat, Frank?" to which question an objection was interposed and sustained. The scope of the cross-examination is a matter which rests largely in the discretion of the trial court, and, while it would have been proper to have allowed the answer, it was not reversible error not to do so.

As a witness in his behalf, the appellant called his son, who was a member of the crew, and this question was asked: "What was the general condition on the boat, the conduct of the different members of the crew toward Frank?" to which question an objection

was interposed and sustained. There was no offer of proof.

If the relation of the respondent with the other members of the crew was not pleasant, this would have some bearing upon the question of whether he voluntarily quit. After the appellant was required to elect between his two defenses, the case stood as though his only affirmative defense was that the respondent had voluntarily quit.

While the evidence should have been admitted upon the issue presented, we think the failure to receive it does not necessarily require a reversal of the judgment. From other evidence in the case it is apparent that some members of the crew were friendly to the respondent, and some were unfriendly. We will assume that the witness to whom the question was propounded would have answered that the conduct of other members of the crew on the boat was unfriendly toward the respondent, and, with this assumption, taken in connection with all the other evidence of the case, the weight of the evidence would still be with the finding of the trial court that the respondent had been discharged by the appellant, and that he did not voluntarily quit.

There is some contention that, under the general custom of the business in which the parties were engaged, the respondent, at the time he was discharged, was entitled only to the net earnings of the catch up to that time, but we think there is no substantial basis for denying a recovery upon this ground.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.